## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Sidney B. Brooks

| | |
|---|---|
| In re: ) | |
| ) | |
| HAROLD FREDERICK RIEBESELL ) | |
| ) | Bankr. Case No. 06-12014-SBB |
| SS# XXX-XX-3969 ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| W.A. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | Adversary Case No. 06-01913-SBB |
| ) | |
| v. ) | |
| ) | |
| HAROLD FREDERICK RIEBESELL, JR. ) | |
| ) | |
| Defendant. ) | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

Following trial in this adversary proceeding on April 11, 2008, the Court hereby enters its findings of fact, conclusions of law and enters the following Order.

**I.     Summary and Question Presented**

Plaintiff, W.A. Johnson, Jr., ("Plaintiff") is a creditor of debtor-defendant Harold Frederick Riebesell, Jr. ("Defendant") by virtue of a promissory note dated April 22, 2003 in the principal amount of $194,303.94, with interest thereafter accruing as provided therein ("April 22, 2003 Note"). The April 22, 2003 Note is a consolidation of two different loans between the Plaintiff and the Defendant at two different times and for two different purposes. The first loan arose on December 14, 1999 for $90,000.00. The first loan was subsequently modified and extended. The first loan as modified and extended was consolidated into a final loan with the extension of further monies in the amount of $45,000.00. This second loan of $45,000.00 was lent during the period from December, 2002 to April, 2003.

Plaintiff was friends with the Defendant and had employed Defendant as his attorney prior to the loans and Defendant remained his attorney during the course of both loans. The loans were solicited by Defendant as his financial condition worsened—a financial crisis that eventually lead up to his bankruptcy filing.

The question presented before the Court is whether the obligation(s)—the two loans—owing to Plaintiff by Defendant are nondischargeable under 11 U.S.C. § 523(a)(2)(A). The Court ultimately finds that all elements of a nondischargeable debt are present pursuant to 11 U.S.C. § 523(a)(2)(A) with the possible exception of the "justifiable reliance" element required under applicable law. And, therefore, the Court finds that the particular issue—the focus of the inquiry here—is whether there was "justifiable reliance" throughout the loan process, here, leading to the single promissory note—that is, the April 22, 2003 Note.

Put another way, the core question presented here is, was there present the essential element of "justifiable reliance on both loans?" The Court concludes that, in this case, there was "justifiable reliance" on the part of Plaintiff when the first loan was made in 1999, but there was not "justifiable reliance" when the second, later loan was made in 2003. Consequently, that portion ($45,000.00) of the April 22, 2003 Note and attendant interest related thereto shall be dischargeable. The remaining indebtedness shall be nondischargeable.

## II.     **Background**

Defendant is an attorney licensed, since 1972, to practice law in the state of Colorado. His practice in the past ten years has been focused on estate and business planning. Defendant filed for relief under Chapter 7 of the Bankruptcy Code on May 22, 2006. Until after filing bankruptcy in this case, Defendant had been exclusively in private practice as an attorney.

Over the course of several years, Defendant borrowed money personally on repeated occasions from a number of individuals, many of whom were current or past clients of his legal practice. Defendant has disclosed in his Schedules filed in this case perhaps 19 such loans still outstanding at the time of filing and totaling almost $1 million. Only two of those loans were secured, in whole or part. One of those loans for $20,000.00 was made to Defendant by a client only three months before his bankruptcy filing in this case. In his bankruptcy filing before this Court, Defendant sought to discharge all such creditors having made personal loans to him.

Defendant admitted in his trial testimony that he failed to make any written disclosure to any of those clients prior to soliciting and obtaining loans from them as required under Rule 1.8(a) of the Colorado Rules of Professional Conduct, effective since January 1, 1993.

Without disclosure to any of these creditors, a number of whom had loans already in default, Defendant testified at trial that in April 2004 he entered a Marital Agreement with his wife and pursuant to that Agreement transferred his residence to her which he had re-financed only four months earlier for $639,996.20, with proceeds used "to re-finance business and educational debt," according to Schedule F of his filed Schedules.

2

Plaintiff is listed on Defendant's Schedules as a creditor to whom an undisputed debt was owing. Plaintiff is well-educated, savvy and sophisticated. Among other jobs and professional work, Plaintiff was a very successful businessman. Plaintiff had known Defendant for a number of years, having gone to the same high school and later living in the same neighborhood where they socialized on occasion and their children played together.

In July 1999, Plaintiff consulted Defendant for legal advice on his intent to purchase stock and consult with a small company. Defendant acted as Plaintiff's counsel in preparing documents for that purpose which were executed on October 29, 1999. Thereafter, Plaintiff consulted Defendant again as his legal counsel in April 2000 about developing a Family Trust which Defendant subsequently prepared and delivered to Plaintiff on August 29, 2000.

Plaintiff consulted Defendant, in his capacity as an attorney, again in late 2000 about investing in real estate, in 2001 about more estate planning and in 2002 to prepare a life insurance trust.

Throughout this period, Defendant billed Plaintiff for legal services which Plaintiff paid. Defendant also retained Plaintiff's files as his counsel after specific services were performed. It is undisputed that there was no termination by Defendant of the attorney-client relationship with Plaintiff over this period. With one exception for Plaintiff's earlier divorce, Plaintiff did not consult with any attorneys other than Defendant. Based on their relationship, Plaintiff also testified that he trusted Defendant as his attorney as well as his friend.

In December 2002, Plaintiff became involved in a business relationship with Defendant sharing office space with his law firm. Although not entirely clear, the arrangement was a consulting business and a professional relationship. That relationship quickly soured and in March or April 2003, Plaintiff left the office space. At the same time, he terminated Defendant as his attorney and has not consulted Defendant for legal advice since. The evidence before the Court is persuasive that, in March or April of 2003, the Plaintiff terminated the Defendant as his attorney because of Defendant's failures to pay on his obligations, Plaintiff's loss of confidence in the Defendant, and questions as to Defendant's legal ability and competence.

Within two months after Defendant first provided the legal services to Plaintiff in October 1999, Defendant approached Plaintiff for a personal loan of $90,000.00. This loan was to be repaid within one year. Defendant explained to Plaintiff that he needed the loan because he was changing law firms and his existing law firm owed him funds which was still being resolved. Defendant told Plaintiff that he was highly optimistic for his future financial success at a new law firm and his loan would just serve as a bridge between the two practices. No collateral for the loan was discussed. It is also undisputed that no written or oral disclosures were made by Defendant, an attorney, to Plaintiff, his client, of the potential conflict of interest in borrowing money from him as his attorney,

3

the risk of non-payment, or that Plaintiff seek independent counsel before making the loan.

Plaintiff did no investigation of Defendant's financial condition nor did he consult outside counsel. Plaintiff only knew what Defendant had told him and the outward appearance of Defendant being a successful attorney who appeared frequently in social pages of the newspaper. Defendant admitted at the time he requested the first loan from Plaintiff he had previously borrowed from other clients. On December 14, 1999, Plaintiff delivered a check to Defendant for the requested loan amount of $90,000.00 and received back from Defendant a promissory note ("December 1999 Note") signed by Defendant which he had prepared with a one year term and interest at 12% per annum.

Nine months after receiving the first loan incorporated into the December 1999 Note, Defendant informed Plaintiff in August 2000 that he could not pay back the loan in one year, or by December 2000, as originally agreed and Plaintiff agreed to an additional one year extension. As a result, Defendant prepared a new note ("August 29, 2000 Note") incorporating the principal and accrued interest on the December 1999 Note, for a new principal balance of $97,663.56, interest accruing thereupon at 12% per annum.[1]

At a meeting in August 29, 2000, Plaintiff's personal calendar confirms that he met Defendant at his law office to obtain a Family Trust document which Defendant had prepared for him, to pay his outstanding bill for legal fees of $3,000.00, and to receive a the August 29, 2000 Note.[2] No payments were ever made on the August 29, 2000 Note by Defendant to Plaintiff and in 2002 Defendant informed Plaintiff that he had no funds to pay him back.

In December 2002, with the August 29, 2000 Note in default, Plaintiff agreed to help Defendant with his new business to provide consulting services. Defendant told Plaintiff that the success of that business would allow him to repay the existing loan. Plaintiff agreed to help that business by providing further funds totaling $45,000.00 to Defendant over the next four months. In turn, Defendant prepared and delivered the April 22, 2003 Note to Plaintiff from Defendant for $197,303.94.[3] The Note amount consisted of (a) the principal amount outstanding and interest on the original $90,000.00 loan through April 22, 2003 and (b) the additional loan of $45,000.00. The due date for payment on the April 22, 2003 Note was January 31, 2005, with interest at 12% per annum and a default rate of 24% per annum. No collateral was provided as security for the April 22, 2003 Note.

When no payments were received, Plaintiff began demanding payment in 2005. When no response was received to his demands, he hired counsel in April 2006 who in May 2006 filed suit against Defendant on the April 22, 2003 Note in Denver District

---

[1]   Plaintiff's Trial Exhibit 3.

[2]   Plaintiff's Trial Exhibit 18.

[3]   Plaintiff's Trial Exhibit 4.

4

Court.  The evidence at trial was undisputed that the amount owed with interest and default interest, as provided in the April 22, 2003 Note was $281,013.95 as of May 1, 2006.  Thereafter, the Defendant filed for bankruptcy relief and obtained a stay of further enforcement of that claim.

At trial Plaintiff testified and it was undisputed that he first learned of the gravity of Defendant's dismal financial condition after the bankruptcy petition was filed and by reviewing Defendant's Schedules at the Clerk's Office of this Court.  Plaintiff further testified that he also learned at the first meeting of creditors in Defendant's bankruptcy case that other clients of Defendant were included as creditors in his filed Schedules.  After filing of his Complaint to commence this action against Defendant to deny discharge of his claim under 11 U.S.C. 523(a)(2)(A), Plaintiff testified that he learned in October 2007 that another scheduled creditor and client of Defendant's had filed a complaint with the Disciplinary Counsel of the Colorado Supreme Court who oversees licenses of Colorado attorneys and their compliance with the Rules of Professional Conduct.

In an action commenced against him by the Disciplinary Counsel on that complaint, Defendant entered a Stipulation of Misconduct acknowledging under oath that he had violated Colorado Rule of Professional Conduct 1.18(a)[4] by: "1) borrowing money from a client pursuant to terms which were not faire and reasonable to the client under the circumstances; and 2) failing to inform the client that the use of independent counsel may be advisable."[5]

Under facts similar to those for the delivery of legal services to Plaintiff, Defendant acknowledged in that Stipulation that he continued to have an attorney-client

---

[4]   Specifically, Colorado Rule of Professional Conduct 1.18(a) provides:

> (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
> (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

[5]   Plaintiff's Trial Exhibit 13.  The Order Approving Conditional Admission of Misconduct and Imposing Sanctions pursuant to C.R.C.P. 251.22 was Plaintiff's Trial Exhibit 14.

5

relationship with the complainant even though the last services he provided were nine months before the loan.

In sworn deposition testimony in this adversary proceeding, which was introduced at trial, Defendant stated that he believed he had no affirmative duty to make any disclosure to Plaintiff in soliciting the loans. He further asserted that it was up to Plaintiff, instead, to have asked Defendant for additional information. Plaintiff testified that prior to entering his attorney-client relationship with Defendant he had never made any personal loans.

### III. Discussion

#### A. Burden of Proof

The burden of proof is on the Plaintiff with respect to his claim under 11 U.S.C. § 523(a)(2)(A).[6] Moreover, the Plaintiff must prove the elements—all of the elements—of his claim under 11 U.S.C. § 523(a)(2)(A), by a preponderance of the evidence.

#### B. Credibility

As a predicate for this opinion, the Court makes the following observations regarding the credibility of the witnesses because much of this case hinges upon the credibility of the parties. The Court had the opportunity to hear the testimony of both the Plaintiff and Defendant and observe their demeanor. The Court finds that the Plaintiff herein was credible and the documentary evidence admitted during the trial corroborated his testimony. The Court, however, finds that the Defendant was not credible. His testimony was not believable and the documentary evidence did not support his contentions.

#### C. Section 523(a)(2)(A) and "Justifiable Reliance"

To prevail under 11 U.S.C. 523(a)(2)(A), Plaintiff has the burden of proving, by a preponderance of the evidence, that:

(1) the debtor made a false representation;
(2) the debtor made the representation with the intent to deceive the creditor;
(3) the creditor relied on the debtor's representation;
(4) the creditor's reliance was justifiable; and
(5) the creditor was damaged as a proximate result.[7]

---

[6] *See Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10 th Cir. 1996).

[7] *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1373 (10th Cir. 1996)((identifying the five elements necessary to a determination of non-dischargeability under 11 U.S.C. § 523(a)(2)(A), but requiring reasonable reliance); *Field v. Mans,* 516 U.S. 59, 70, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995) (citation omitted)(utilizing the "justifiable reliance" standard).

6

As is discussed below, the first, second, fourth, and fifth elements have been met by the Plaintiff. In this case, however, the focus of the inquiry and the difficult question concerns "justifiable reliance" and the seeming transition from "justifiable reliance" at the time of the first loan of $90,000.00 to reliance that may not have been justified at the time of the second loan of $45,000.00.

"Justification is a matter of the qualities and characteristics of the particular case, rather than of application of a community standard of conduct to all cases."[8] "Justifiable reliance" is not without some limits, however, as a person is:

> required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses.[9]

The Supreme Court also concluded that:

> As for the reasonableness of reliance, our reading of the Act does not leave reasonableness irrelevant, for the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact. Naifs may recover, at common law and in bankruptcy, but lots of creditors are not all naive. The subjectiveness of justifiability cuts both ways, and reasonableness goes to the probability of actual reliance.[10]

As is discussed below, the Plaintiff has demonstrated "justifiable reliance" throughout the transactions with the Defendant. That is, until he loaned the final $45,000.00

---

[8]     516 U.S. at 70, 116 S.Ct. at 444 (citation omitted).

[9]     *Id.* (citation omitted).

[10]     516 U.S. at 76, 116 S.Ct. at 446.

7

### D. Client to Attorney Loans and Dischargeability under Section 523(a)(2)(A)

In the case of *In re Young*, the Court considered comparable facts to those here involving an unpaid client loan for which denial of discharge was sought against a New Mexico attorney. Claims in *Young* were sought under several sections of § 523, including subsection (a)(2)(A) as here. Applying Rule 16-108A of the New Mexico Rules of Professional Conduct,[11] the Court in *Young* held that the Rule created an affirmative duty of disclosure by an attorney in a business transaction with a client and "failure to disclose such information constitutes a 'false representation' or 'false pretenses' under 523(a)(2)(A)."[12] The Court in *Young* further emphasized that the disclosure must be in writing.[13]

The Tenth Circuit in *Young* also held there was a second false representation in failing to disclose a potential conflict of interest in the attorney's promissory note to the client becoming stale.[14] Colorado law on this point is consistent with that cited in *Young* from New Mexico.[15]

In *Young*, the Court further held that the intent to deceive element of § 523(a)(2)(A) could be "inferred" from the totality of circumstances or from a "knowingly" made false statement.[16] While remanding the case because no finding was

---

[11]  *Id.*, n. 6. Specifically, Rule 1-108A as relied on in *Young,* provided:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
>
> (1) the transaction and terms on which the lawyer acquires the interest are faire and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;
>
> (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
>
> (3) the client consents in writing thereto.

New Mexico Rules of Professional Conduct 16-108(A).

[12]  *Young*, 91 F.3d at 1374.

[13]  *Id.*. at 1374-75.

[14]  *Id.* at 1375.

[15]  *In re Cimino*, 3 P.3d 398, 401 (Colo. 2000); *People v. Mulligan*, 817 P.2d 1028 (Colo. 1991); and, *People v. Bennett*, 810 P.2d 661, 664-65 (Colo. 1991).

[16]  *Young*, 91 F.3d at 1375.

8

made by the bankruptcy court on this second element, the Court in *Young* did find that the third and fourth elements had also been met because the client testified he had not consulted another attorney in entering the loan. In addition, the client's reliance was held to be reasonable based on the attorney's failure to disclose and the client's trust in him as his own counsel.[17] Finally, the Court in *Young* held the last element of loss was satisfied by the client having never received payment on the promissory note from the attorney.[18]

      The Ninth Circuit has followed *Young* in denying discharge of a debt arising from a client loan transaction with an attorney in *In re Tallant*.[19] In *Tallent,* the Ninth Circuit cited California Rule 3-300[20] as well as comment (f) of § 551 of the Second Restatement of Torts, to hold an "affirmative duty of disclosure" by the attorney existed.[21] The Court in *Tallant*, also found the second element of § 523(a)(2)(A) for a knowing misrepresentation was established by the attorney's duty to know the contents of the ethical rule on business transactions with a client which he violated.[22]

      Even though the client in *Tallant* was a sophisticated business man, the court found the attorney implicitly exploited his history with the client to put him "off his guard" and "purposely suppressed warnings needed by the client to protect his own interest."

---

[17]   *Id.; Young* utilized the "reasonable reliance" standard. The proper standard at present, in accord with Supreme Court decision in *Field v. Mans,* is the "justifiable reliance" standard.

[18]   *Id.*

[19]   218 B.R. 58 (9th Cir. B.A.P. 1998).

[20]   *Id.* at 61,n. 3. California Rule of Professional Conduct 3-30 provides:

> A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied:
>
> (A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and
>
> (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and
>
> (C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition.

[21]   *Tallant,* 218 B.R. at 65.

[22]   *Id.* at 66.

9

Finally, the court in *Tallant* considered the subjective standard of "justifiable reliance" and found it proven in two ways. First, the trust was "inherent" in the attorney-client relationship.[23] Second, the court in *Tallant* followed precedent from the Ninth Circuit Court of Appeals[24] for the principle that "non-disclosure of a material fact in the face of the duty to disclose has been held to establish the requisite reliance and causation for actual fraud under the Bankruptcy Code." The court in *Tallant* also cited *In re Young* for that same proposition.[25]

The Defendant relied at trial primarily on three defenses against Plaintiff's Complaint:

(1) That the attorney-client relationship by and between the Defendant and Plaintiff no longer existed at the time the loans were made. Consequently, unlike the facts presented in *Young* and *Tallant,* the debt here is dischargeable.

(2) That Mr. Johnson was a sophisticated businessman and, therefore, there could be no "justifiable reliance".

(3) That, because none of Defendant's other client creditors have brought actions with respect to fraud, there is no fraud here.

With respect to the Defendant's first defense—that Defendant had no existing attorney-client relationship with Plaintiff when his loans were made—the evidence refutes that assertion. Plaintiff first consulted Defendant in July 1999 for services continuing into October 1999. The first loan was made less than two months later. Defendant alone continued to represent Plaintiff as legal counsel on various occasions during calendar years 2000, 2001 and 2002. No termination of their relationship occurred until Plaintiff terminated it in March or April 2003. On the same day that Plaintiff signed the extension of the original note, August 29, 2000, he handed Defendant payment for his outstanding legal fees and received from Defendant in person the Family Trust document he had prepared as his counsel. In his Stipulation of Misconduct, Defendant recognized an attorney relationship on facts less compelling than those with this Plaintiff. In *People v. Bennett*, the court on similar facts to those here rejected the argument no attorney-client relationship existed.[26]

---

[23] *Id.* at 67.

[24] *In re Apte*, 96 F.3d 1319, 1323 (9th Cir. 1996).

[25] *Tallant,* 218 B.R. at 68-69, n. 16. This Court has itself recognized in the context of § 523(a)(2)(A) that the "deceit is made easier and more effective" because the defendant-debtor was an attorney. *In re Kudla*, 105 B.R. 985, 990 (Bankr. D. Colo. 1989).

[26] 810 P.2d at 664.

Plaintiff testified that the transactions—or more accurately, the replacement notes including the additional $45,000.00 loan—were also made before his attorney-client relationship with Defendant terminated.  Both parties testified the loan extensions and the $45,000.00 loan were made at Defendant's request to generate funds for re-payment of his original loan.  As such, the later loan extensions and the additional $45,000.00 loan, arguably, arose out of the original false representation or failure to disclose and are, thus, arguably, non-dischargeable under § 523(a)(2)(A) if the original loan is non-dischargeable.[27]

Second, Defendant argued that there is no "justifiable reliance" because Plaintiff was a sophisticated businessman and should have known better.  Again, the facts and applicable precedent refute that contention.  Plaintiff was a long-standing friend and client who testified he trusted Defendant.  Like the clients in *Young* and *Tallant*, that relationship is enough to infer "justifiable reliance" even under a subjective standard.  As in *Tallant*, this Court can only conclude that because of the relationship, Plaintiff justifiably dropped his guard.  In *People v. Barbieri*,[28] the Colorado Supreme Court recognized also that the trust inherent in the attorney-client relationship may result in a client exercising a lower level of diligence in making loans.  Plaintiff's counsel also made the point at trial, with which this Court agrees, that it would be one thing to question whether reliance was justified when only one party fell for a scheme and others similarly situated were able to avoid it.  The record in this case, however, is directly to the contrary.  There is no evidence that even one of Defendant's clients refused his request for a loan.  As an estate planning attorney, Defendant would have had access to confidential information about his clients' finances to help refine his pitch.  Alternatively, this Court adopts the holding in *Tallant*, that non-disclosure of material facts by an attorney to a client in a loan transaction between them itself establishes the requisite reliance and causation under § 523(a)(2)(A).

Third, Defendant asked this Court to infer that none of his other client creditors believe they had been defrauded because even those represented by counsel had not similarly filed actions to deny discharge of his debts to him.  The Court declines to make that inference.  The debt to Plaintiff was the largest of Defendant's clients loans and therefore it makes sense that he had the greatest incentive to pursue it.  Second, dischargeability actions are not inexpensive to pursue and it does not appear Defendant has sufficient post-petition assets or income to satisfy all his creditors.  Third, this Court takes judicial notice of the transcript of the § 341 meeting in this case and finds that several other client creditors made the effort to appear at that meeting and express their concerns.  Fourth, at least one other client creditor did pursue him, successfully, through the office of Disciplinary Counsel with the Colorado Supreme Court.

In contrast, Defendant points to no facts which would support that inference.  If anything, the facts known to the Court would support an inference that Defendant

---

[27]   *Cohen v. De La Cruz*, 523 U.S. 2143, 218-19 (1998).

[28]   61 P.3d 488, 491-92 (Colo. 2000).

11

deceived a number of client creditors who for unknown reasons elected to not pursue their claims. The totality of the circumstances include the following facts:

>   (a)   Defendant acknowledged wrongdoing in other similar cases;
>
>   (b)   the number and nature of creditors' complaints expressed at Defendant's Section 341 Meeting of Creditors;
>
>   (c)   the numerous former clients scheduled as creditors by the Defendant in Schedule F of his bankruptcy case file; and
>
>   (d)   in early 2004 Defendant transferred title to his residence, (then, recently refinanced), to his wife for the admitted purpose of shielding it from his creditors.

He also continued to borrow from a client on an unsecured basis just three months before petition filing and long after Plaintiff had started making demands for repayment.

### E.   The Sliding Scale of "Justifiable Reliance" in this Case

The Court concludes that with respect to all but the last $45,000.00 loaned by the Plaintiff to the Defendant, there was "justifiable reliance." However, as to the additional $45,000.00 advanced in 2003 there was no "justifiable reliance" on the part of the Plaintiff.

In December 2002, the obligation to Plaintiff was in default. Indeed, the Plaintiff's original loan went into default two years earlier and was not ever a performing loan. The evidence demonstrates that Plaintiff was aware of the financial distress Defendant was then in. Nevertheless, the Plaintiff loaned an additional $45,000.00. Plaintiff was not a naif, but was, instead a competent business man. One's use of his senses and an inspection of the situation with Plaintiff's business acumen, or common sense, would have indicated big trouble with this loan.[29] The Court cannot conclude that when this additional loan of $45,000.00 was made there was "justifiable reliance." Consequently, this Court concludes that the $45,000.00 loan incorporated in the April 22, 2003 Note is dischargeable.

## IV.   Order

Based on the foregoing, this Court concludes that Plaintiff has met each one of the elements of § 523(a)(2)(A) and enters judgment in his favor and against Defendant for $281,013.95, plus interest since the date of petition filing, May 26, 2006, at 24% per annum, less $45,000.00, and attributable interest thereto. Plaintiff shall tender to the Court a proposed Order and Judgment calculating and confirming the total amount deemed nondischargeable consistent with this Court's ruling within ten days of the entry

---

[29]   *See Field v. Mans,* 516 U.S. 59, 70, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995) (citation omitted).

of this Order. Said judgment is not subject to discharge. In addition, Plaintiff is awarded his costs of this action and may submit a bill of cost for taxing of same.

Dated this 23rd day of May, 2008.

BY THE COURT:

*[signature: Sid Brooks]*

Sidney B. Brooks,
United States Bankruptcy Judge